Thank you, Your Honor. This is Bill Nino, and I do represent Frederick Manfred Simon on these two cases, 3019 and 3022, and Your Honor's correct, the arguments overlap. First of all, I want to thank the court for tolerating this telephonic argument. I apologize to Mr. Harrington, whom Mr. Archer is also there, and I apologize to the court for any inconvenience. Your Honor, 30129 is the small case, and that trial occurred in the Eastern District of Washington in October of 2007 on two counts of wire fraud. That was transferred over from the District of Montana. However, Montana counsel argued it or tried the case in front of Judge Nielsen in the Eastern District of Washington. In those counts of wire fraud, the jury exonerated Frederick Manfred Simon of count one and found him guilty of count two. Our main argument is also the same argument in the wire and nail fraud cases in the large case, 30132, for arguing Mr. Frederick Manfred Simon did not have specific intent to commit those crimes. So now, if you want, Your Honor, that was a brief trial. He was convicted on the one count. He was ultimately sentenced to 60 months, with the larger later case, and that sentencing occurred on March of 2009. Mr. Frederick Manfred Simon did testify at that first trial, although the next trial I'm about to talk about did not testify. And the facts of the first trial were basically breach of a contract, similar to lots of the other allegations, where he did not impart defects to a corporation after they sent him a total of $97,000, which was 60% of the contract price. Basically, we're arguing in that that he didn't have specific intent. We brought him because he actually ultimately asserted that he was worried VFAC was going to breach the contract and not send him the final 40%, which was, he said, his profit. And he sent possibility from them, and at the same time, they were telling him they wanted to give him another contract. And he found that inconsistent, and he also found that they had an office in Iran. He was worried because Iran was an embargoed country, and he didn't want to get in trouble. And so he would assert that he was perhaps reckless in his dealings, and apparently it was apparently a very difficult order because he had to gather cards from all over, and he said that they wanted them all at once. So he said it was a nightmare. And based on that, we're arguing that maybe it wasn't more than recklessness, and certainly he didn't have the requisite specific intent. Now I'm going to move right into that same issue in 30132, if that's what the Court wants. Well, so I guess the part I find troubling about your argument is that in both 29 and 32, you put on evidence the reckless businessman theory, but the jury seems to have rejected that. And isn't that really a jury question? It certainly is, Your Honor. That part of the brief is a sufficiency of the evidence argument. Actual, the Court is correct. All right. Well, and isn't it, I mean, is there any evidence that in either the first business that was the subject of the 97 conviction or the second business, the RLI business, nothing was ever actually supplied and nothing was ever actually ever paid for in full? Your Honor, I would respectfully disagree. The testimony in the first trial was that he was attempting to gather it, but the Court is correct. Nothing was actually sent to the effect. In the second large trial, however, for example, he attempts to start satisfying one of the government contracts that page 10 of my brief. It points out that Frederick Manson Simon did order thunder valves and gaskets.  That was from an outside supplier, so he could go ahead and start to satisfy the government contract. In addition, he offered one company, Bolton, a refund. The testimony shows. And he also offered Park Filter, he offered to pay them $2,500 a quarter. And he also did supply some parts. Unfortunately, they were not compliant. They were found to be deficient. Okay. Do you have an additional argument, or do you want to reserve your time and have the government argue? I would reserve the time and rely on Frederick Simon's brief. All right. And so, Ms. Glenn? Yes, Your Honor. I'm assuming that you are aware that I am only covering for Otto Simon, count one, the conspiracy, and eight other counts of mail fraud. And the standard of review for us, because there was a motion at the end of the file for acquittal, the Rule 29, would be sufficiency of the evidence. And it is our position going out, I hope you can hear me, that in count one, in that case, there was never any contact with Manfred. And, in fact, Ms. Ventura testified that never in her correspondence with Frederick did she even see the name of Manfred. With respect to count nine, which is addressed in my brief, pages 12 through 14, what we have is a Ms. Wayne who also testified that, ordered from Frederick, that certainly not with any communication whatsoever from Manfred in that excerpt at 151, 153. However, one individual did, who hired an attorney, get a demand letter to Manfred because had been told that Manfred was the contact person, and therefore there was a little telephonic case. The only account in which there was real contact of any sort, however remote, would be in 12 and 13. And I think it's important that the court look with respect to Manfred Otto, that even if one were to give a title or say that so-and-so holds the position, that doesn't necessarily mean that there's any participation. And that was testified to by Ms. Weitz with reference to excerpt 153, 154 in the excerpt. Additionally, in part two, again, Manfred is listed, but there was, in my knowledge, not listed as the person who put these statements on the corporate data. But once again, that doesn't mean that he was in a conspiratorial relationship with Frederick. And I know the court is aware of the elements of conspiracy, but the evidence truly, from our perspective, is not sufficient to show that there was, in fact, an agreement to engage in criminal activity and one or more overt acts on the part of who defrauded for the requisite insurance. There is absence of a conspiracy in that the sale fraud counts in the case of Otto certainly require a specific instance of crime, as well does the conspiracy. And even so, the connection to a conspiracy, once established, would require that this connection would have to be proven beyond a reasonable doubt, and that's in the brief at page 26, which I do adopt. In this instance, there absolutely was not any real evidence substantial that there was an agreement between Frederick and Manfred to commit the crimes of sale fraud. And one of the things that stood out so clearly to me was even what occurred at sentencing, which we could not challenge because it was below the sentencing guidelines, but even the judge indicated that Mr. Otto Manfred Simon was involved out of sinful loyalty to his son. And every time someone tried to make a connection with him, they would talk to Frederick, and someone would say, well, call Manny. And granted that both tried to check and simply did without being hit by anyone, followed the direction of us. And does the Court have any other questions or any questions at all? This is Judge Gould. The only question I have is whether here we're basically dealing with the sufficiency of evidence standard under Jackson v. Virginia and asking could a rational jury have found guilt beyond a reasonable doubt on each of the required elements? Your Honor, actually, I would argue the position of Manfred Otto that no. The cases were tried, and I think some of the evidence, although the jury was tried on first to start to neutralize their evidence, they heard what I believe is rather prejudicial evidence that came in against Frederick. And I would say that a rational person, looking at the entire record of the involvement of Otto, would not conclude that that was a conspiracy or that a conspiracy in fact existed. Okay, thank you.
judges: Hall, Wardlaw, Gould